# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 1:17-cv-640-JL |
| Plaintiff, ) | Hon. Joseph N. LaPlante |
| ) | |
| v. ) | |
| ) | |
| ANNETTE B. DEMAURO, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Thomas Peter Cole*
THOMAS PETER COLE
ANGELA FOSTER
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C.  20044
Mr. Cole: 202-514-9611 (v)
Ms. Foster: 202-514-5238 (f)
Thomas.P.Cole@usdoj.gov
Angela.R.Foster@usdoj.gov

**TABLE OF CONTENTS**

# Contents

Table of Contents ................................................................................................................ ii

UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT ....................................................................................................................... 1

The motion to alter or amend should be denied. ................................................................ 1

    I.    A motion to alter or amend can only be granted if the movant demonstrates an intervening change in controlling law, a clear legal error, or newly discovered evidence. ......... 1

    II.    The motion should be denied, as Defendant is revisiting arguments that have already been made and rejected. ............................................................................................................. 3

Conclusion .......................................................................................................................... 9

# UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT

## THE MOTION TO ALTER OR AMEND SHOULD BE DENIED.

**I.  A motion to alter or amend can only be granted if the movant demonstrates an intervening change in controlling law, a clear legal error, or newly discovered evidence.**

In the First Circuit, a motion to alter or amend a judgment may be granted only if the movant demonstrates compliance with an exacting standard: "an intervening change in controlling law, a clear legal error, or newly discovered evidence [that] warrants modification of the judgment." *In re Genzyme Corp. Sec. Litig.*, 754 F.3d 31, 46 (1st Cir. 2014) (citing *Soto–Padró v. Pub. Bldgs. Auth.*, 675 F.3d 1, 9 (1st Cir. 2012)). Such relief is to be "granted sparingly." *Capron v. Office of Attorney Gen. of Mass.*, 944 F.3d 9, 44 (1st Cir. 2019). *See also Marie v. Allied Home Mortg. Corp.*, 409 F.3d 1, 7 (1st Cir. 2005) (noting "it is very difficult to prevail on a Rule 59(e) motion").

Just as it has identified the narrow grounds for granting a motion to alter or amend, the First Circuit has also identified situations that do *not* meet the standard for granting such a motion. A "motion for reconsideration is not the venue to undo procedural snafus or permit a party to advance arguments it should have developed prior to judgment" or a "mechanism to regurgitate old arguments previously considered and rejected." *Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 930 (1st Cir. 2014) (internal citations and quotation marks omitted); *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006) ("Unless the court has misapprehended some material fact or point of law, such a motion is normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected.").

Given that Defendant is not attempting to demonstrate an intervening change in law or newly discovered evidence, First Circuit precedent seemingly would require that the Defendant

1

show there has been an error of law. *In re Genzyme Corp. Sec. Litig.*, 754 F.3d at 46; *Capron, v.* 944 F.3d at 44; *see also Soto–Padró,* 675 F.3d at 9.

Defendant hinges her argument on the contention that there has been "a manifest error of law and fact, result[ing] in a manifest injustice" that must be corrected (ECF No. 51, at 5), but argues for adopting a more lenient standard for the granting of a motion to alter or amend than the First Circuit has ever applied. Citing a footnote in the *Marie* opinion, Defendant contends that, in addition to a showing of a manifest error of law, a motion to alter or amend may be granted by showing "manifest injustice" or a "manifest error of fact." (ECF No. 51, p. 4 (citing *Marie*, 402 F.3d at 7 n.2)). Those two additional elements arguably overstate the First Circuit standard for the granting of a motion to alter or amend, as neither element has been used to resolve a case. They are instead identified only by a single "see also" cite to Wright's *Federal Practice and Procedure* contained in a footnote of a First Circuit opinion. *See Marie*, 402 F.3d at 7 n. 2.

No First Circuit cases appear to have ever adjudicated a motion to alter or amend by using this purported "manifest injustice" or a "manifest error of fact" standard. *See Scholz v. Goudreau*, 901 F.3d 37, 48 (1st Cir. 2018) (denying plaintiff's motion to alter or amend for "fail[ing] to establish a clear error of law or point to any sufficiently consequential newly discovered evidence."); *Franchina v. City of Providence*, 881 F.3d 32, 56 (1st Cir. 2018) (in ruling on motion to alter or amend, "we keep in mind that '[s]uch a motion must either establish a clear error of law or point to newly discovered evidence of sufficient consequence to make a difference.'") (quoting *Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 518 (1st Cir. 2016)); *Landrau-Romero v. Banco Popular De Puerto Rico*, 212 F.3d 607, 612 (1st Cir. 2000) (saying "[i]t is well-settled, however, that new legal arguments or evidence may not be presented via

2

Rule 59(e); rather, motions under that rule must either clearly establish a manifest error of law or present newly discovered evidence."); *F.D.I.C. v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992) (saying "[m]otions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence.").

This Court has cited the *Marie* opinion for the proposition that "a movant invoking Rule 59(e) must show 'manifest errors of law or fact, newly discovered or previously unavailable evidence, manifest injustice, [or] an intervening change in controlling law.'" *Saunders v. First Magnus Fin. Corp.*, No. 17-CV-27-JL, 2018 WL 9439842, at *1 (D.N.H. Sept. 21, 2018) (quoting *Marie*, 402 F.3d at 7 n.2). It is not clear, however, that this language was intended to articulate a broader standard, as this Court denied the motion without discussing the specific *Marie* factors. In this case, we urge the Court to apply the standard for Rule 59(e) that has been consistently used by the First Circuit, which would require a clear error of law, as opposed to the broader standard identified by the footnote in *Marie*. In any event, under any reasonable articulation for the standard for a motion to alter or amend, Defendant cannot show that the motion to alter or amend should be granted.

**II.      The motion should be denied, as Defendant is revisiting arguments that have already been made and rejected.**

The government argued at trial that Defendant was liable for the FBAR penalties assessed against her because her actions demonstrated that she was, at the very least, willfully blind as to what her obligations under the laws were. Those obligations included obligations to file income tax returns reporting her taxable income, which included interest income from her foreign accounts, and obligations to file FBARs once she had foreign accounts with more than $10,000 in any given year. One component of this argument is that, for a decade, Defendant did not take sufficient steps to comply with her obligation to timely file income tax returns and that,

3

if she had taken sufficient steps, she would have been alerted to her obligation to file FBARs for the 2007 through 2009 years, the years involved in this lawsuit.

The Court accepted the government's theory of liability. This Court found that Defendant acted with "willful blindness" with respect to her failure to learn about and comply with her FBAR reporting requirements. In particular, this Court found that Defendant had failed to adequately seek advice from tax professionals or attorneys, "despite (1) her past practice of relying on such professionals to handle her affairs, (2) her admission that she knew her foreign accounts were accruing interest, (3) her payment of taxes on interest earned from her domestic savings accounts, (4) her payment of taxes on residential assets she acquired through her divorce decree, and (5) her representation to UBS that she had sought unspecified tax advice for her account." (ECF No. 31.) This Court's conclusion, which was made pursuant to a thorough evaluation of the evidence presented at trial, should not be disturbed.

No error of law exists here—and no error has been identified by the Defendant—because this Court applied the correct test for determining whether there had been a willful violation of the statute. As this Court explained, "a person commits a reckless violation of the FBAR statute by engaging in conduct that violates an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." (ECF No. 48, at 22) (quoting *Bedrosian v. United States* 912 F.3d 144, 153 (3d Cir. 2018)). Specifically, this Court said that "[f]or IRS filings, a person acts recklessly when he or she '(1) clearly ought to have known that (2) there was a grave risk that the filing requirement was not being met and if (3) he [or she] was in a position to find out for certain very easily.'" (ECF No. 48, at 23) (quoting *Bedrosian*, 912 F.3d at 153). Lastly, this Court said that "[w]illful blindness—as where a defendant consciously chooses to avoid learning about reporting requirements—also constitutes

4

a form of recklessness as to the FBAR-reporting requirement." (ECF No. 48) (citing *United States v. Williams*, 489 F. App'x 655, 658 (4th Cir. 2012)). Much of Defendant's post-trial briefing was devoted an argument that this standard should be rejected, in lieu of the "actual knowledge" standard applicable in criminal tax reporting cases. (ECF No. 48, at p. 19, n. 92). This Court rejected the proposed criminal standard, finding it "incongruent with how other courts construe 'willfulness' both in the civil FBAR reporting context and in civil penalty statutes generally." (ECF No. 48, at 20.) This Court applied the correct standard when making a determination as to whether Defendant made willful violations of the statute.[1]

Likewise, there is no error in fact or manifest injustice that would justify altering or amending the judgment. First, as the First Circuit has noted, a motion to alter or amend is not the vehicle to rehash arguments that could or should have previously been made. With her motion Defendant seeks to revisit the application of the civil standard to the facts of her case, now that the Court has rejected her preferred legal standard for interpreting the statute, and attempts to put a spin on the evidence that would allow her to escape liability.

Second, and in any event, the government presented and the Court considered more than adequate evidence to support its conclusion. In its post-trial brief the government explained how Defendant had access to high-quality representation before, during, and after her divorce proceeding. We explained how in her divorce proceeding, Defendant was represented by

---

[1] In its opinion, the Court also cited in support of its conclusion regarding the willfulness standard *United States v. Toth*, No. 15-13367, 2019 WL 7039627 (D. Mass. Dec. 20, 2019), a case the government had not cited in its briefs because *Toth* involved an interlocutory order deeming willfulness established for purposes of the litigation as a sanction for the defendant's discovery violations. (ECF No. 48, pp. 20-21.) Following this Court's decision, the court in *Toth* issued a final decision, again in favor of the government, applying the same standard of willfulness used in its prior sanctions decisions, as well as by this Court. *United States v. Toth*, 2020 WL 5549111, at *6 (D. Mass. Sept. 16, 2020) (saying that "[g]iven that this is a civil matter, however, the Court applied the correct standard" for willfulness.).

5

numerous lawyers. (Tr. 02/18/2020 am 46:12-22; 47:18-21; *see also* DeMauro Dep., Tr.Ex. 63, 118:16-119:7). In their efforts to collect from her ex-husband, her team of attorneys hired other attorneys to give them advice and act as receivers. (Tr. 02/18/2020 am 46:16-22; DeMauro Dep. Tr., Ex. 63, 82:9-16). All told, Defendant spent at least a million dollars on legal fees related to her divorce and collection of assets from her ex-husband pursuant to her divorce decree. (Tr. 02/18/2020 am 88:23-89:10; *see also* Ex. 30 (handwritten letter where Ms. DeMauro says "I have accumulated…over 100 legal boxes and 5 filing cabinets in my home with cases from NH-MA-Fla-Nevada-Texas-Colorado-and TN and more," and "there were many COURT RECEIVERS INVOLVED, and MANY, MANY COURTS INVOLVED and MANY, MANY, MANY, MANY LAWYERS INVOLVED." (block caps in original))). The government cited all the evidence that it could locate showing Defendant's testimony that she never asked any legal or financial professional for advice about her foreign accounts. (DeMauro Dep., Ex. 63, 102:12-103:20; *see also* Tr. 02/18/2020 am 54:6-55:2; 59:22-60:2; 02/18/2020 pm 62:14-16, 84:2-7; 02/19/2020 am 57:24-58:8).

Although Defendant argues now that the Court should have placed more weight on the scant testimony that the existence of her foreign accounts may have been revealed to her advisors, the Court's conclusion that Defendant did not take sufficient steps to learn about her obligation to file income tax returns and report her foreign accounts on FBARs is sound. It is not enough merely to have an adviser. One must provide the adviser with all the information needed to provide sound advice. Otherwise, it is garbage in, garbage out. *See United States v. Ott*, 2019 WL 3714491, at *2 (E.D. Mich. Aug. 7, 2019) (for debtor to invoke so-called advisor defense in FBAR case, he "must show that, under all the circumstances, such reliance was reasonable and that they acted in good faith; for example, where the taxpayer engages a professional tax advisor,

6

provides him or her with "full details," and then relies upon his or her advice.") (citing *Neonatology Assocs., P.A. v. Comm'r*, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002) (identifying three-prong test for defense of reliance on professional advice in response to tax penalty: "(1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment.")). At no point in the trial did Defendant offer testimony that she told her advisers about the interest her foreign accounts were earning and that she affirmatively sought from them advice on how to report that interest on her tax return. On the contrary, her testimony at trial was that, with respect to whether the money she received in the divorce was taxable, Ms. DeMauro did not consider asking someone who was qualified to give tax advice. (Tr. 02/18/2020 pm 83:24-84:1). Further testimony, cited by the Court, was that her "understanding was that whatever I received from the - - my divorce decree was mine and mine alone and that went for anything that I had received and it was nontaxable." (ECF No. 48, at 4.) This Court correctly found that Defendant's own testimony was essentially the death knell to any type of professional reliance defense. *See, e.g., Palmer*, 465 F.3d at 30 ("no hint of error" discerned in a denial of a motion to alter or amend "[s]ince the [trial] court had not overlooked that allegation but, rather, had found it wanting.")[2]

---

[2] The correct cite for the *Hatfried* opinion Defendant cites is: *Hatfried, Inc., v. Comm'r*, 162 F.2d 628, 636 (3d Cir. 1947). Nothing about that decision is inconsistent with the arguments the government has made in this case or this brief, or with the Court's verdict. The Third Circuit there found that the taxpayer relied on specific advice given by an advisor. No such conclusion can be reached here. Ouellet testified that even though he may have known about the foreign account, it was possible for such accounts to not be interest-bearing accounts, any return he prepared would have been prepared with interest information given to his firm by Defendant, and that Defendant never asked him whether the interest from her foreign account was taxable. (Tr. 02/18/2020 pm 21:14-22:4, 23:16-24:4). *See also Swanson v. Comm'r,* 97 T.C.M. (CCH) 1127, 2009 WL 321381 (T.C. 2009) (reliance upon advisor found to be "unreasonable where a

7

There is likewise no merit to any of Defendant's other efforts to poke holes in this Court's well-reasoned decision. In her motion, Defendant criticizes this Court for giving "limited" weight to the evidence showing that she had made a representation to UBS that she had sought unspecified advice for her account. (Motion to Alter or Amend, ECF No. 51, at p. 3, n.1, citing ECF No. 48, at p. 31.) Defendant contends that the representations should not be given *any* weight. (*Id.*) The Court here is referring to the banker's notes that were maintained by UBS, and entered into evidence as Exhibit 7. (ECF No. 48, n. 113). The banker's notes came into evidence without objection from Defendant; having been entered into evidence without limitation, they can be used for any purpose. If Defendant thought it improper for the notes to be considered at all, Defendant should have filed a motion *in limine*, or, at the very least, objected to their introduction. The government made strategy decisions at trial about what documents to present to an 80-year old defendant who testified over the course of two days; the knowledge that certain documents had been entered into evidence at the beginning of the case was part of that strategy. It was not improper for the Court to give weight to a document that was entered into evidence.

Defendant also argues that reliance upon income reporting obligations to demonstrate a willful failure to file an FBAR is without precedent. But courts routinely sustain willful FBAR violations where a taxpayer has improperly completed an income tax return. *E.g., Norman v. United States*, 942 F.3d 1111, 1115 (Fed. Cir. 2019) (affirming willfulness finding where income tax return falsely indicated that she had no interest any foreign bank account); *United States v. Ott*, 441 F. Supp. 3d 521, 529 (E.D. Mich. 2020) (charging taxpayer with knowledge of

---

taxpayer claimed to have relied upon an independent adviser because the adviser either did not testify or testified too vaguely to convince [court] that the taxpayer was reasonable in relying on the adviser's advice regarding the propriety of the claimed deductions.").

8

information contained on an income tax return, "including the Schedule B language referring the taxpayer to FBAR filing requirements"); *United States v. Bernstein* 2020 WL 5517315, at *7 (E.D.N.Y. Sept. 14, 2020) (willfulness finding sustained in part based on improper completion of Schedule B on income tax return). Defendant argues for a result that allows her to escape liability because she did not timely file income tax returns at all for tax years 2002 through 2010, and thus, she contends, had not been properly alerted to her FBAR filing obligations. The government's argument has been that if she *had properly and timely filed* her income tax returns, she *would have been* alerted to the FBAR filing requirements, as the Schedule Bs attached to the 2007, 2008, and 2009 returns each asked her to identify the countries in which she might have had foreign accounts, and directed her to the FBAR reporting requirements for those accounts. Defendant's failure to timely file any tax returns at all for years, despite earning substantial income from her foreign accounts during each of those years, should not give her an escape route from the penalties associated with her failure to file FBARS.

## CONCLUSION

The Court's decision was the result of considered and reasoned deliberation. There is no basis for the entry of an order that would alter or amend the judgment. Defendant's motion should be denied.

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General


*/s/ Thomas Peter Cole*
THOMAS PETER COLE
ANGELA FOSTER
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
Mr. Cole: 202-514-9611 (v)
Ms. Foster: 202-514-5238 (f)

9