UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA,

  Plaintiff,

  v.             17-CV-640-JL

ANNETTE B. DEMAURO,

  Defendant.

**<u>DEFENDANT'S REPLY IN SUPPORT OF HER MOTION TO AMEND JUDGMENT</u>**

  COMES NOW DEFENDANT, Annette B. DeMauro ("Defendant"), by and through undersigned counsel, and hereby submits her reply in support of her motion to amend judgment (ECF 51) (hereinafter the "Motion"):

  **I.**  **Relevant Procedural Background**

  Defendant filed the Motion on September 25, 2020 and the United States filed its response in opposition to the Motion on October 9, 2020. ECF 52. Under this Court's rules, the moving party may file a reply in support of its motion within seven days of the non-moving party's response, without leave of court, so long as the motion was "dispositive." L.R. 7.1(e)(1). While the Court's rules do not expressly define the term "dispositive motion," most courts have determined that a motion made under Rule 59(e) constitutes a dispositive motion, particularly where, as here, the motion seeks to resolve a particular issue with finality. *See SEC v. Razmilovic,* 2015 WL 4878482, * 3 at n. 2, Case No. 04-cv-2276 (E.D. N.Y. August 14, 2015)("A motion for reconsideration under Rule 59(e) is considered to be a dispositive motion."); *Burkhart v. Washington Metro. Area Transit Auth.,* 112 F.3d 1207, 1215 (D.C. Cir. 1997) ("The term 'dispositive motion' includes a motion that, if granted, would result either in the determination of

1

a particular claim on the merits or elimination of such a claim from the case."); *Belfont Sales Corp. v. United States,* 698 F.Supp. 916, 919 n. 7 (Ct. Int'l Trade 1988)(Finding a motion under Rule 59(e) to be a dispositive motion where "the defendant prays for a final, albeit different, determination" than that initially rendered by the court.).

Here, Defendant seeks an alternative, yet final, determination by the Court that Defendant's FBAR violations were not willful and she is not liable for heightened FBAR penalties. If granted, Defendant's Motion will resolve that issue with finality. Consequently, Defendant's Motion is dispositive and under the local rules Defendant was not required to seek leave prior to filing this reply. This conclusion is supported by cases from this district in which parties were permitted to file a reply in support of their Rule 59(e) motion without first obtaining leave. *See e.g. Saunders v. First Magnus Fin. Corp.,* 2018 WL 9439842, No. 17-CV-27, (D.N.H. Sept. 21, 2018). [1]

**II.     Argument**

    **A. Defendant's Motion used the Correct Standard under Rule 59(e)**

Plaintiff's response incorrectly argues that the First Circuit has only ever recognized three discrete bases under which to seek relief under Rule 59(e): an intervening change in the law, newly discovered evidence, or clear legal error. However, First Circuit precedent clearly establishes that a manifest error of fact or the need to correct a manifest injustice also serve as bases to grant Rule 59(e) relief. *See Marie v. Allied Home Mortg. Corp.,* 402 F.3d 1, 7 n. 2 (1st Cir. 2005); *Palmer v. Champion Mortg.,* 465 F.3d 24, 30 (1st Cir. 2006)(Including a court's misapprehension of material fact or point of law among the bases on which Rule 59(e) relief may rest). Moreover, trial courts from this district and elsewhere within the First Circuit echo that standard. *Saunders v. First*

---

[1] To the extent the Court disagrees with this conclusion, given the lack of a definition of a "dispositive motion" under this Court's rules, Defendant requests the Court to provide an opportunity to file motion requesting leave *nunc pro tunc* to file a reply to Plaintiff's response.

*Magnus Fin. Corp.,* No. 17-CV-27, 2018 WL 9439842, at * 1 (D.N.H. Sept. 21, 2018); *In re Financial Oversight and Management Board for Puerto Rico,* 427 F.Supp.3d 260, 265 (D.P.R. 2019)(Evaluating a Rule 59(e) motion under a "manifest injustice" standard). Further buttressing the point, courts in other circuits have referenced "manifest injustice" as a basis for relief under Rule 59(e). *See e.g. Pacific Ins. Co. v. American Nat'l Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir. 1998).

None of the cases cited by Plaintiff which list an intervening change in the law, newly discovered evidence, or clear legal error as potential avenues for relief under Rule 59(e) expressly limit relief to those three bases. In fact, in some instances courts only expressly list two avenues for relief. *Franchina v. City of Providence,* 881 F.3d 32, 56 (1st Cir. 2018). This indicates that when the First Circuit has described the legal standard applicable to Rule 59(e) motions, it has not set out to clearly define the outermost limits of Rule 59(e) relief. Rather, it has often described two or three common bases for relief without ruling out other alternatives.

Additionally, Rule 59(e) provides district courts with substantial discretion to review their orders and judgments, and placing an artificial limit on the type of error that can give rise to Rule 59(e) relief—without an examination of the underlying substance of the moving party's arguments—is inconsistent with that range of discretion. *Venegas-Hernandez v. Sonolux Records,* 370 F.3d 183, 190 (1st Cir. 2004)("Rule 59(e) itself does not state the grounds on which relief under the rule may be granted, and the district courts have considerable discretion in deciding whether to grant or deny a motion to alter or amend under Rule 59(e).").

Finally, Rule 59(e) itself does not place express limitations on the type of error that may justify relief under the rule. *Venegas-Hernandez v. Sonolux Records,* 370 F.3d 183, 190 (1st Cir. 2004)("Under the broad umbrella of the district court's discretionary power, the case law has

3

developed a *non-exhaustive* list of circumstances in which relief is available under Rule 59(e)….")(emphasis added). This is in sharp contrast to Rule 59(a), which provides specific grounds for a new trial in jury and non-jury settings. Setting forth discrete grounds for relief in one subsection of the rule, while not doing so in another subsection of the same rule, indicates the drafters' intent not to limit the available grounds for relief under subsection (e). Furthermore, this Court has itself referred to the manifest error of fact or manifest injustice standard articulated in *Marie* and elsewhere as the appropriate Rule 59(e) standard. *Saunders v. First Magnus Fin. Corp.*, No. 17-CV-27, 2018 WL 9439842, at * 1 (D.N.H. Sept. 21, 2018). While it may not have explored this factor further in that decision in-depth, this Court's express articulation of the *Marie* standard demonstrates that it is still viable law in this Court and in this circuit, and is the appropriate standard under which to evaluate Defendant's Motion.

### B. Defendant's Arguments were not made Previously

Defendant's Motion does not rehash previously rejected arguments. Defendant filed her Motion to clarify the apparent misapprehension of the Court regarding the connection between income reporting and FBAR filing, to correct the Court's substantial disregard of facts supporting non-willfulness and reliance on non-credible evidence supporting willfulness, and to attempt to correct the resulting injustice to Defendant. As noted extensively in the Motion, income reporting and FBAR filing are distinct and separate obligations triggered by different facts. Nevertheless, the Court determined that the government established willfulness with respect to Defendant's FBAR violations based on Defendant's income reporting failures. In doing so, the Court failed to account for the differences between income reporting and FBAR reporting, failed to link Defendant's actions with recklessness in respect of her *FBAR filing* obligations, and failed to justify its holding that Defendant engaged in conduct carrying an unjustifiably high risk of harm

4

(failure to file FBARs) that was either known or so obvious it should have been known. *See* ECF 48 at p. 22. Rather than re-arguing already decided points, Defendant's Motion identifies and seeks correction of flaws in the Court's decision. This is proper subject matter for a motion under Rule 59(e).

### C. Defendant was not Reckless or Willfully Blind to her FBAR Obligations

Plaintiff's focus on the procedural aspects of Rule 59(e) obfuscates its failure to adequately address the key points raised in the Motion. Specifically, that Defendant forthrightly told her certified public accountant about her foreign account—on at least two occasions, before the years at issue in this case—but was never advised of her FBAR filing obligation, that Defendant's CPA was not even aware of the FBAR form or the requirements that flowed from it until much later (perhaps not even until 2014), and that FBAR filing obligations and income reporting obligations are entirely separate from one another.

#### i. Defendant Adequately Informed her CPA

Plaintiff asserts that "it is not enough merely to have an adviser[,] [o]ne must provide the adviser with all of the information needed to provide sound advice." ECF 52 at p. 6. Yet that is exactly what Defendant did. At least twice, she told her CPA, Mr. Ouellet, that she owned a foreign bank account, and Ouellet knew that the foreign account contained a "significant" amount of money. ECF 48 at p. 7. Armed with that information Ouellet should have let Defendant know about her FBAR requirements, and it was eminently reasonable for Defendant to assume she had provided Ouellet with sufficient information for him to fully advise her of her reporting obligations. If Defendant could not rely on a CPA—who was recommended to her—to properly advise her regarding her reporting obligations, it is hard to imagine who she *could* rely on.

Defendant's reliance on Ouellet is justified considering her background. It is undisputed that 2001 was the first year Defendant was required filed a federal income tax return. Prior to that, her adult life had largely been spent under the thumb of her abusive ex-husband or spent trying to get just compensation through the divorce process. Even the basics of federal tax return filing and information reporting obligations were alien to her. This Court justifiably characterized Defendant as clueless with respect to tax and financial reporting matters. Feb. 19, 2020 Tr. AM at 132:23-133:10. She did not know enough to even *ask* the right questions. Providing the relevant facts to Ouellet, which she did, was all that could have been reasonably expected of her.

The only record evidence that could be viewed as showing an understanding by Defendant of a potential need to report the existence of her foreign account is the UBS note which states Defendant "declared the account on taxes." Tr. Ex. 7 at p. 2. But that is not credible evidence. The government argues that if evidence is admitted, it may be given weight by the Court. ECF 52 at p. 8. Defendant does not disagree with that principle in general, but in this instance no weight should be given. As noted in the Motion, the drafter of the notes is not trustworthy. In fact, if he or she were in the United States, there is every chance he or she would be prosecuted for facilitating UBS's fraud.[2] Yet now, when it is convenient, the government treats the banker's uncorroborated and unverified words as completely truthful. The UBS note is not credible and should not have been afforded any weight.

>           ii.    **Any Failure to tell Ouellet about Foreign Source Income was Immaterial**

Moreover, even if Defendant had asked explicitly Ouellet *how* to report the existence of her foreign account, as opposed to just providing him with all of the information he needed to

---

[2] *See e.g.* *https://www.justice.gov/opa/pr/former-ubs-banker-charged-helping-us-taxpayers-use-secret-swiss-bank-accounts-evade-us-taxes* (Last visited October 13, 2020).

6

properly advise her on that point, it is still unlikely FBARs would have been filed. After all, Ouellet was unaware of the FBAR filing obligation until years after he first advised Defendant. Feb. 18, 2020 Tr. PM at 26:14-17. Consequently, any failure by Defendant to explicitly ask Ouellet how to report the existence of her foreign account or the interest it was generating was immaterial; Ouellet would have provided incorrect advice in any event.

### iii. Income Reporting Failures are not Determinative of FBAR Filing Failures

Further, Plaintiff's response in opposition fails to address the distinct and separate nature of FBAR filing and income reporting. As laid out in Defendant's Motion, the FBAR filing obligation and the obligation to report income exist independently of one another. A person may have to file an FBAR even if he or she is not required to file a tax return. Conversely, each of the cases cited by Plaintiff in support of its argument that courts routinely sustain willful FBAR penalties based on income tax reporting failures, *Norman, Ott,* and *Bernstein,* involves taxpayers who filed tax returns but misrepresented the status of their respective foreign accounts on those returns. That did not happen with Defendant. There is no indication in the record that Defendant was aware of her FBAR filing obligation *or would have any reason to suspect that such an obligation existed, or willfully blinded herself to that obligation*.

Contrary to the government's assertion, amendment of the Court's judgment to relieve Defendant of her willful FBAR penalties will not allow Defendant to "escape" liability or reward her failure to file income tax returns, for multiple reasons. First, Defendant could have been, and future FBAR filers under circumstances like Defendant's may still be, assessed non-willful FBAR penalties. After all, the FBAR statute contemplates lesser penalties for non-willful violations. In effect, under Plaintiff's formulation, it appears the only people who would be entitled to non-willful penalties are those who are entirely unaware of their reportable interest in a foreign

7

financial account. But the non-willfulness penalty *must* be more expansive than that, particularly considering the statute *requires that no penalty be imposed* where the violation was the result of "reasonable cause." 31 U.S.C. § 5321(a)(5)(B)(ii). Being entirely unaware of a foreign financial account surely constitutes reasonable cause for not timely reporting the account, thereby indicating that a middle ground—to which non-willful penalties apply—exists. Defendant's case falls within that middle ground.

Second, regardless of any FBAR penalties, Defendant would still be liable for penalties associated with her failure to file income tax returns, including penalties for failing to timely file the return, failing to timely pay any tax due, failure to file applicable foreign information returns governed by Title 26 rather than Title 31 (for instance, IRS Form 8938),[3] and allegations of fraud (civil and criminal) relating to the non-filing. Moreover, the statute of limitations to assess additional tax would remain open for any years with respect to which income tax returns remained unfiled. Consequently, it is incorrect to argue, as Plaintiff does, that Defendant, or anyone else, would be able to "escape" liability or be unjustly rewarded by failing to file income tax returns. Just because one penalty regime (or one degree of a penalty regime) is inapplicable does not mean the violator will escape punishment or will be incentivized to break the law.

In addition, as noted previously, Plaintiff's claims that had Defendant properly and timely filed her income tax returns she would have been alerted to the FBAR filing requirements ring hollow considering the ineffectiveness of Defendant's advisors, especially Ouellet. The same goes for Defendant's alleged failure to tell her accountant about the interest income generated by the

---

[3] Taxpayers are required to report their interests in foreign financial assets on Form 8938, so long as those assets meet certain value thresholds. Failure to file this form, which must be attached to a taxpayer's Form 1040, can result in penalties of $10,000. This form was not in effect during the years at issue in this case, but its current application underscores the fact that a taxpayer will not "escape" liability with respect to foreign accounts by failing to file income tax returns annually.

foreign account. Defendant's 2001 income tax return was properly and timely completed, and Defendant did not learn of the FBAR filing requirement then, notwithstanding her CPA's knowledge of Defendant's foreign account. Similarly, Defendant's CPA prepared a draft 2005 return but Defendant did not learn about the FBAR filing obligation in that instance either, even though he acknowledged his understanding that the account held a significant balance. Both times, Ouellet's lack of knowledge was to blame. The draft 2005 return is particularly instructive. That return included a schedule B to report domestic interest income. However, the record does not indicate that the inclusion of foreign account interest income on that schedule B would have made any difference with respect to FBAR filing in later years. After all, Ouellet, who prepared the draft 2005 return, knew Defendant recently owned a foreign bank account with a substantial balance and clearly reviewed Schedule B of the draft 2005 return, yet he *still* failed to notify Defendant of her FBAR filing obligation or even follow up regarding the status of her foreign account.

With respect to *FBAR filing* compliance, the record is clear that the inclusion of foreign account interest income on the return would have been immaterial. Plaintiff's persistent focus on the interest generated by the foreign account (*see e.g.* ECF 52 at p. 9 n. 2) misses the point. There is no dispute that Defendant was required to report foreign source interest income during the years at issue, and ultimately, she did, while paying all tax, penalties and interest due. But the generation of interest in a foreign account is *not determinative* of whether there is also an FBAR filing obligation in respect of that account. That is a separate analysis, the most important elements of which are the potential filer's reportable interest in the account and the account balance during the year. Oullet had that information—the record is clear that he knew of Defendant's ownership of a foreign account, and the fact that the account's balance was "significant"—yet he never followed up on the FBAR filing obligation. His knowledge, or lack of knowledge, of the interest generated

9

by the account *had no bearing* on the advice he should have given about Defendant's FBAR filing obligations based on information he indisputably possessed. When examined with an understanding that FBAR filing and income reporting are entirely separate, the government's theory and the Court's rationale for sustaining willful FBAR penalties—the Defendant should have been aware of her income reporting obligations, which would have led to her learning of her FBAR obligations—simply does not hold up under these facts. For these reasons, the Court's verdict sustaining willful FBAR penalties against Defendant was based on a material misapprehension of the relationship between FBARs and income reporting, among other flaws, which resulted in a manifest injustice against Defendant that should be corrected on review of Defendant's Motion.

Respectfully Submitted,

/s/ Rosario Mario F. Rizzo                                   Dated: October 16, 2020
Rosario Mario F. Rizzo, Esq.
NH Bar # 9080
801 Main Street
Concord, MA 01742
Tel: (978) 371-2500
Fax: (978) 371-1352
Email: rosario.rizzo@rizzolawfirm.com

/s/ Gerard J. Levins
Gerard J. Levins, Esq.
MA Bar # 649184
Levins Tax Law
1671 Worcester Rd, Suite 304
Framingham, MA 07017
Tel: 888-333-9501
Fax: 888-333-0291
Email: gerard@levinstaxlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document is being filed through the Court's ECF system on October 16, 2020 and will be sent electronically to all counsel of record on the same date.

/s/ Gerard J. Levins